Filed 4/29/26  Briggs v. City of Los Angeles CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JEFFREY BRIGGS, | B341919 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV08846) |
| v. | |
| CITY OF LOS ANGELES, ACTING BY AND THROUGH THE LOS ANGELES DEPARTMENT OF WATER AND POWER et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lia Martin, Judge.  Affirmed.

Law Office of Annette Harings and Annette Harings for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney; Benjamin F. Chapman, General Counsel for Los Angeles Department of Water and Power; and Jennifer Gregg, Assistant City Attorney for Defendants and Respondents.

_____

Plaintiff and appellant Jeffrey Briggs sued his former employer, defendant and respondent City of Los Angeles, acting by and through the Los Angeles Department of Water and Power (DWP), and his former supervisor, defendant and respondent Daniel Figley (collectively, respondents), alleging multiple claims under California's Fair Employment and Housing Act (FEHA, Gov. Code, § 12900 et seq.),[1] along with causes of action under the California Family Rights Act (CFRA) and Labor Code section 98.6.  Briggs maintains, inter alia, that respondents subjected him to adverse employment actions because of his stutter and certain injuries for which he took leave, failed to reasonably accommodate his disabilities, and retaliated against him for complaining to DWP that it had not paid him and his fellow coworkers all wages owed.  Briggs appeals from the judgment entered after the trial court granted respondents' motion for summary judgment.

Briggs fails to overcome the presumption of correctness accorded to the trial court's entry of summary judgment.  Of note, Briggs omits from his opening brief a summary of the facts relevant to this appeal, depriving many of his arguments of the context necessary for us to review them.  Further, Briggs does not demonstrate the court abused its discretion in ruling on the parties' evidentiary objections.  He also fails to show the court erred in concluding (1) respondents met their initial burden on summary judgment; and (2) his Labor Code section 98.6 and FEHA disability discrimination and reasonable accommodation

_____

[1] Undesignated statutory citations are to the Government Code.

2

claims fail as a matter of law.  Finally, Briggs forfeits his appellate challenges as to the remaining causes of action.  We thus affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

The record is voluminous.  We summarize only those facts pertinent to our disposition of this appeal.  We describe in greater detail certain facts in our Discussion, *post*.

Briggs began working for DWP as a power shovel operator (PSO) in 1987.  PSOs operate heavy machinery in connection with construction activities.  At all relevant times, Briggs was assigned to DWP's Owens Valley Electrical System (OVES), located in Lone Pine, California, a rural mountain area approximately 270 miles outside of Los Angeles.  Briggs has a stuttering condition.

From August 2013 to May 29, 2016, Figley was a foreman and one of Briggs's supervisors at OVES.  On May 30, 2016, DWP promoted Figley to superintendent; Figley remained a supervisor in Briggs's chain of command at OVES until October 2020.  Briggs alleges Figley is "one of the main actors in DWP's discrimination and harassment against Briggs."  In his declaration offered in opposition to summary judgment, Briggs

---

[2] We derive our Factual and Procedural Background in part from undisputed aspects of the trial court's order granting summary judgment, admissions made by the parties in their appellate briefing, and respondents' assertions that Briggs does not contest in his reply.  (See *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 772, fn. 2, 773–774 (*Association for Los Angeles Deputy Sheriffs*) [employing this approach].)

maintains he retired in December 2021 because he suffered "too much harassment and . . . couldn't bear it anymore."

On March 2, 2020, Briggs filed a complaint against DWP and Figley, alleging nine causes of action: (1) disability discrimination in violation of FEHA; (2) failure to engage in the interactive process as required by FEHA; (3) failure to provide reasonable accommodations under FEHA; (4) retaliation under FEHA; (5) FEHA disability harassment; (6) failure to prevent harassment and discrimination in violation of FEHA; (7) interference with CFRA leave; (8) retaliation in violation of Labor Code section 98.6; and (9) age discrimination in violation of FEHA. Whereas Briggs asserted all nine causes of action against DWP, Briggs named Figley as a defendant on only the fifth cause of action for disability harassment.

Although Briggs raises many grievances against DWP and Figley, relevant to this appeal are his complaints that DWP: assigned Briggs electrical craft helper duties in 2017 (Discussion, part E.4, *post*); refused to promote him on seven occasions from 2017 to 2019 (Discussion, parts E.1 & F, *post*); placed him on workers' compensation leave for approximately 33 days from July to September 2017 (Discussion, part E.2, *post*); erroneously placed him on two attendance improvement plans and medical affidavit status in 2019 based in part on his absences in November 2018 for a work-related injury (Discussion, part E.3, *post*); issued him a notice to correct deficiencies in August 2019 (Discussion, part E.4, *post*); and placed him on paid administrative leave in September 2019, at which time DWP distributed a restriction notice barring Briggs from entering its facilities (Discussion, part E.4, *post*). Briggs also avers that in August 2019, Figley ordered Briggs to deliver personally a

4

doctor's note shortly after Briggs had foot surgery. (Discussion, part F, *post*.) Additionally, Briggs claims respondents retaliated against him after he complained in March 2019 that he and his coworkers had not been paid all wages owed. (Discussion, part G, *post*.)

Respondents moved for summary judgment or, in the alternative, summary adjudication on each of Briggs's causes of action. Briggs opposed the motion, and respondents filed a reply. Each side filed written evidentiary objections.

On June 6, 2024, the trial court heard and granted respondents' motion for summary judgment. In its ruling, the court sustained 31 of respondents' evidentiary objections and overruled most of Briggs's objections. On August 21, 2024, the court filed a judgment in favor of respondents in accordance with its order granting summary judgment. On October 18, 2024, Briggs timely appealed from the judgment.

## STANDARDS OF REVIEW

Summary judgment motions are governed by a three-step procedure. (See *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492 (*Los Angeles Unified School Dist.*).) " ' " 'First, [a court] identif[ies] the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, [the court] determine[s] whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue.' " ' [Citation.]" (See *ibid.*; see also *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1250 [holding that at the

second step, "the moving party bears the initial burden of production to make a prima facie showing that no triable issue of material fact exists"].)

"Under summary judgment law, ' "[t]here is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." [Citation.] In making this determination, "the court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact, [but] it must nevertheless determine what any evidence or inference could show or imply to a reasonable trier of fact." ' [Citation.]" (*Lares v. Los Angeles County Metropolitan Transportation Authority* (2020) 56 Cal.App.5th 318, 331–332.)

"We review an order granting or denying summary judgment or summary adjudication independently." (*Los Angeles Unified School Dist.*, *supra*, 57 Cal.App.5th at p. 492.) "Only *admissible evidence* is . . . [considered] in deciding whether there is a triable issue." (See *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761.) "We review the trial court's rulings on evidentiary objections for an abuse of discretion." (*Id.* at p. 762.)

"Additionally, '[w]hen the error is one of state law only, it generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached.' [Citation.] An appellant bears the burden of satisfying this state law prejudice standard." (*Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at p. 777.)

" ' "Even when our review on appeal 'is de novo, it is limited to issues which have been adequately raised and supported in

[the appellant's opening] brief. [Citations.] Issues not raised in an appellant's brief are deemed waived or abandoned.' " [Citation.] To succeed[,] . . . [an appellant] must first establish error. . . . " '[T]he most fundamental rule of appellate review is that an appealed judgment or order is presumed to be correct.' [Citation.] . . . [Citation.]" [Citation.]' [Citation.] To 'rebut[ ] the presumption of correctness accorded to the trial court's decision,' the appellant must ' " ' "supply[ ] the reviewing court with some cogent argument supported by legal analysis and citation to the record." ' [Citation.]" [Citations.]' [Citation.]" (*Cruz v. Tapestry, Inc.* (2025) 113 Cal.App.5th 943, 953–954 (*Cruz*).) Consequently, " ' "[d]e novo review does not[, for instance,] obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. . . ." ' [Citation.]" (See *Los Angeles Unified School Dist.*, *supra*, 57 Cal.App.5th at p. 492.)

"We are not bound by the issues actually decided by the trial court. 'The appellate court should affirm the judgment of the trial court if it is correct on any theory of law applicable to the case, including but not limited to the theory adopted by the trial court, providing the facts are undisputed. [Citations.] Thus we must affirm so long as any of the grounds urged by [respondents], either here or in the trial court, entitle [them] to summary judgment.' [Citation.]" (See *Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1498 (*Schmidt*).)

## DISCUSSION

For the reasons set forth below, we conclude Briggs does not show the trial court erred in finding that his FEHA disability discrimination, FEHA reasonable accommodation, and Labor Code section 98.6 causes of action fail as a matter of law.

(Discussion, parts E–G, *post*.) We also conclude Briggs forfeits his claims of error concerning his remaining six causes of action. (Discussion, part H, *post*.)

Before reaching those issues, we (1) disapprove of Briggs's attempts to incorporate by reference into his briefing arguments he advanced during the trial court proceedings (Discussion, part A, *post*); (2) reject his challenge to the court's rulings on the parties' evidentiary objections (Discussion, part B, *post*); (3) conclude Briggs has not shown the court erred in finding respondents met their initial burden on summary judgment (Discussion, part C, *post*); and (4) conclude Briggs has failed to overcome the presumption of correctness accorded to the court's decision that all FEHA claims arising before August 30, 2016 are time-barred (Discussion, part D, *post*).[3]

---

[3] Briggs further contends, "The trial court abused its discretion *if* it orally granted a motion for summary judgment at the . . . hearing based on the length of Briggs's responsive separate statement of facts." (Boldface & some capitalization omitted, italics added.) We do not address this contention because, assuming solely for the sake of argument that any such oral ruling may be deemed to have been formally adopted into the trial court's final written decision on respondents' motion, we conclude for the reasons set forth in this opinion that Briggs fails to establish the court erred in granting summary judgment. (See Standards of Review, *ante* [noting that a reviewing court is not bound by the trial court's stated rationale for granting summary judgment].)

## A. Briggs May Not Incorporate by Reference into His Briefing Arguments He Made During the Trial Court Proceedings

In his opening and reply briefs, Briggs repeatedly purports to incorporate by reference arguments he made in opposition to respondents' summary judgment motion. For instance, in his reply brief, Briggs asks us to consider certain legal authorities from his opposition brief he claims support his FEHA interactive process cause of action. We reject as procedurally improper Briggs's attempts to incorporate into his appellate briefing arguments he made below. (See *York v. City of Los Angeles* (2019) 33 Cal.App.5th 1178, 1188–1189, fn. 4 ["To the extent plaintiffs purport to incorporate by reference the arguments they made below but have not included in their appellate briefs, we decline to consider them . . . ."].)

## B. We Reject Briggs's Claim the Trial Court Prejudicially Erred In Ruling on the Parties' Evidentiary Objections

Briggs contests the trial court's rulings sustaining 11 of respondents' objections to evidence he offered in opposition to their summary judgment motion, to wit, respondents' objection numbers 2, 3, 5, 11, 13, 18, 21, 22, 24, 26, and 28. In their appellate brief, respondents correctly point out that with "[t]he sole exception" of Briggs's challenge to the court's ruling sustaining respondents' objection number 2, Briggs fails to support these claims of error with citation to legal authority. Briggs thus forfeits his appellate claims concerning respondents' objection numbers 3, 5, 11, 13, 18, 21, 22, 24, 26, and 28. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36

9

Cal.App.5th 142, 156 (*United Grand Corp.*) [holding that an appellant forfeits a contention by "fail[ing] to adequately support . . . [it] with cogent argument or appropriate legal or factual citations"].)

In their objection number 2, respondents argued the following excerpt from Briggs's declaration was inadmissible: "Around this time, [that is, in early 2016,] Figley . . . would call me stupid to my face. Figley would also do these little things like put a big smile on his face, and tell me to go house-to-house when we were working in neighborhoods to tell the residents that we were going to turn their power off, and that their power may be interrupted. But when he found out that I actually enjoyed this work, he stopped letting me do it and got someone else to do it."

Respondents argued Briggs had not shown he was competent to offer this testimony, this passage contained hearsay, and the passage was irrelevant, lacked foundation, and was speculative. In sustaining this objection, the trial court did not specify which of respondents' five grounds rendered this passage from Briggs's declaration inadmissible.

On appeal, Briggs maintains he was competent to offer this testimony, and it was not speculative and did not lack foundation, because he was a percipient witness to the events he described. Briggs also intimates his testimony that Figley called Briggs "stupid" was not hearsay because Briggs did not offer the statement for its truth. Briggs further argues the trial court's exclusion of this "direct evidence of discriminatory conduct based on Briggs's stutter" "substantially prejudiced him" vis-à-vis his efforts to show a triable issue on his FEHA disability discrimination claim.

10

Briggs does not elaborate further on his assertion that his stutter caused Figley to engage in the behavior described in the above excerpt from Briggs's declaration.  Without a more detailed description of the circumstances under which Figley called Briggs "stupid" and ordered Briggs to inform personally residents that their power would be turned off, it is not apparent this portion of Briggs's declaration has "any tendency in reason to prove" that Figley possessed the requisite discriminatory animus.  (See Evid. Code, § 210 [defining " '[r]elevant evidence' "]; Discussion, part E, *post* [explaining that discriminatory animus is an essential element of Briggs's FEHA disability discrimination cause of action].)

The paucity of Briggs's briefing on this point underscores that, even if Briggs's testimony on this point were relevant, he has not shown the trial court prejudicially erred in excluding it, that is, that any rational factfinder could infer from this testimony Figley did in fact subject Briggs to this purported abuse because of Briggs's stutter.  (See Standards of Review, *ante* [explaining that an appellant raising an error of state law typically must show the alleged error was prejudicial, and defining the term "triable issue of material fact"].)  Briggs thus fails to demonstrate the trial court reversibly erred in sustaining respondents' objection number 2.

Additionally, Briggs complains, "The trial court overruled 149 out of 153 of [his] objections, substantially prejudicing [him]." He argues respondents "cited . . . a slew of testimony based not on personal knowledge of the DWP-associated declarants, but based only on hearsay or 'upon information and belief.' "  Briggs provides no analysis regarding any particular objection he believes should have been sustained.  Instead, he purports to

11

incorporate by reference arguments he made below.  This is improper.  (See Discussion, part A, *ante*.)

In sum, Briggs fails to demonstrate the trial court prejudicially erred in ruling on the parties' respective evidentiary objections.

## C.    Briggs Does Not Show the Trial Court Erred In Ruling that Respondents Met Their Initial Burden on Summary Judgment

As to all nine of Briggs's causes of action, the trial court ruled that respondents had met their initial burden of showing no triable issue of material fact exists.

In his opening brief, Briggs raises only two arguments supporting his position respondents did not meet their initial burden.  First, he claims respondents failed to cite evidence substantiating their separate statement of undisputed fact number 77, which undisputed fact "concern[s] why Briggs was returned to work after 52 workdays of administrative leave." Specifically, Briggs maintains, "Respondents' evidence [they cited in support of that fact] is based on DWP's Person with the Most Knowledge ('PMK') deposition wherein the PMK testified he 'did not know' key facts, and would be 'just guessing' who led the investigation into Briggs."  Second, Briggs insists, "Respondents offered no evidence of 'undue hardship.' "

Briggs fails to connect either of these two arguments to the trial court's rulings that respondents met their initial burden as to his nine causes of action.  As noted in our Standards of Review, *ante*, Briggs has the burden to provide cogent argument to support his claims of error.  We do not cull the record to make arguments for the parties.  Further, by omitting a summary of the pertinent facts from his opening brief, Briggs fails to provide

12

the context necessary for us to ascertain what relevance, if any, these two arguments have on whether respondents met their initial summary judgment burden. (See Discussion, part E, *post* [explaining that no factual summary appears in Briggs's opening brief].) Accordingly, Briggs fails to rebut the presumption of correctness accorded to the court's finding that respondents satisfied their initial burden as to each of his causes of action. (See *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 (*Hernandez*) ["We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' "]; Standards of Review, *ante* [discussing the presumption of correctness].)

## D. Briggs Leaves Undisturbed the Trial Court's Ruling that All FEHA Claims Arising Prior to August 30, 2016 Are Time-Barred

The trial court decided that all of Briggs's FEHA claims that "arose prior to August 30, 2016" are barred by the applicable statute of limitations. Briggs does not mention this ruling in his briefing. We thus presume the trial court's conclusion on this point was correct. (See Standards of Review, *ante*.)

## E. Briggs Fails To Demonstrate There Is a Triable Issue on His FEHA Disability Discrimination Cause of Action

"[FEHA] makes it an unlawful employment practice to discharge a person from employment or discriminate against the person in the terms, conditions or privileges of employment, because of physical or mental disability." (See *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 242.)

13

"California resolves employment discrimination claims by applying a burden-shifting procedure.  Under this test, the plaintiff bears the initial burden of proving a prima facie case of discrimination by presenting evidence showing:  (1) he was a member of a protected class, (2) he was qualified for the position sought or was performing competently in the position held, (3) he suffered an adverse employment action, and (4) some other circumstance suggests a discriminatory motive." (*Foroudi v. The Aerospace Corp.* (2020) 57 Cal.App.5th 992, 1007 (*Foroudi*).)

"Once the employee sets forth a prima facie case, the burden shifts to the employer to present evidence of a legitimate, nondiscriminatory reason for the adverse employment action. [Citation.]  If the employer does so, the burden then shifts back to the employee to 'offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.' [Citation.]" (*Foroudi, supra*, 57 Cal.App.5th at p. 1007.)[4]

Our high court has explained that an adverse employment action is an act that is "reasonably likely to adversely and

---

[4] An employee alleging a FEHA discrimination claim may instead invoke a " 'disparate-impact' " theory of liability, which ' " 'involve[s] employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." [Citation.]' [Citation.]" (See *Foroudi, supra*, 57 Cal.App.5th at p. 1004.)  Briggs does not rely on a disparate-impact theory.

14

materially affect an employee's job performance or opportunity for advancement in his or her career."  (See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1035–1036, 1054–1055 (*Yanowitz*) [defining this term for the purpose of FEHA retaliation claims]; see also *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1168 ["[T]he [adverse] employment actions that can give rise to a claim for retaliation are *identical* to the actions that can give rise to a claim for discrimination . . . ."].)

In concluding that Briggs's FEHA disability discrimination cause of action fails as a matter of law, the trial court ruled, inter alia, that "none of the allegedly adverse employment actions the Complaint describes constitute[s] an adverse employment action for purposes of discrimination under the FEHA."

Although this court granted Briggs leave to file a corrected opening brief, entirely absent from that corrected brief is the requisite "summary of significant facts limited to matters in the record."  (See Cal. Rules of Court, rule 8.204(a)(2)(C).)  In lieu of a factual summary, Briggs's opening brief has a section titled "Questions To Be Answered by the Court of Appeal" that contains two subheadings, (1) "Respondents Took Adverse Employment Actions Against Briggs," which section is comprised of a list of 16 events; and (2) "Given FEHA's Prohibition on Disability Discrimination, What Constitutes a Discriminatory or Adverse Employment Action?"; 15 events appear under this subheading. (Boldface & some capitalization omitted.)  The lists under these two subheadings fail to provide the reader with adequate context to determine whether these events are adverse employment actions under FEHA.  For instance, the third item listed under the second subheading avers, without any further detail:

15

"Respondents failed to provide Briggs with information about his CFRA rights."

Furthermore, in the argument section of his opening brief, Briggs urges us to apply the definition of adverse employment action for Title VII cases that the United States Supreme Court announced in *Muldrow v. City of St. Louis, Missouri* (2024) 601 U.S. 346. In particular, Briggs cites the syllabus of the *Muldrow* decision for the following proposition: " 'An employee challenging a job transfer under Title VII must show that the transfer brought about some harm with respect to an identifiable term or condition of employment, but that harm need not be significant.' "[5] Briggs does not address whether *Muldrow*'s definition of adverse employment action from the Title VII context differs from that adopted by our state's appellate courts under FEHA, nor does he explain why he apparently believes the wrongdoing alleged elsewhere in his opening brief satisfies either the Title VII or FEHA definitions of that term.

Briggs thus fails to brief adequately whether the trial court erred in concluding he did not show a reasonable jury could find he suffered an adverse employment action. For that reason alone, we may affirm the judgment as to his FEHA disability discrimination cause of action. (See Standards of Review, *ante* [noting that an appellant must provide some cogent argument to overcome the presumption of correctness]; see also *United Grand Corp.*, *supra*, 36 Cal.App.5th at p. 165, fn. 6 [" '[A]n appellant is

---

[5]  (Quoting *Muldrow*, *supra*, 601 U.S. at p. 346 [excerpt from the syllabus]; see also *Muldrow*, at p. 346, fn. * [explaining that "[t]he syllabus constitutes no part of the opinion of the Court but [was] prepared by the Reporter of Decisions for the convenience of the reader"].)

16

required to not only cite to valid legal authority, but also explain how it applies in his case.' "].)

Notwithstanding these deficiencies in Briggs's opening brief, respondents discuss in their appellate brief whether the following seven purported acts of discrimination supported Briggs's FEHA disability discrimination cause of action: "(1) denying [Briggs] promotions between 2017 and October 2019; (2) assigning him ECH [electrical craft helper] duties in 2017; (3) placing him on paid leave in 2017; (4) including him in DWP's Attendance Improvement Program in 2019; (5) issuing him the August 2019 NTCD [notice to correct deficiencies]; (6) placing him on PAL [paid administrative leave] in September 2019; and (7) issuing the Restriction Notice in September 2019." Because respondents provide context for these seven alleged instances of discrimination that was lacking in Briggs's opening brief, we elect to address whether Briggs has shown that any of them support his FEHA disability discrimination cause of action. (See Discussion, parts E.1–E.4, *post*.)

> **1.** *Briggs does not show that DWP's failure to promote him between 2017 and 2019 gives rise to a viable FEHA disability discrimination claim*

Briggs does not rebut the presumption of correctness accorded to the trial court's conclusion that Briggs failed to establish a triable issue as to his FEHA discrimination cause of action insofar as it is based on DWP's refusal to hire Briggs for positions he sought between 2017 and 2019. As we describe below, the trial court found that one of the jobs Briggs sought required mathematical competency and oral communication skills that Briggs did not possess. As for the other positions Briggs pursued during that timeframe, the court found that he

17

attained low scores relative to other candidates under DWP's two-part examination system.

In the order granting summary judgment, the trial court observed respondents presented evidence showing that "[t]he City of Los Angeles and . . . DWP select candidates for Civil Service Positions based on a two-part examination process, consisting of a Civil Service Exam conducted by the Personnel Department, and a 'Department Selection Process' conducted by the [H]iring Division, wherein available positions are offered to the applicants who achieve the highest final score(s)." The court explained these scores were based on "oral interviews and testing on specific knowledge, skills, and abilities critical to the job." The court also observed that according to respondents' evidence, "An applicant with a disability who passes a Civil Service Examination, and thereafter qualifies for the Department Selection Process[,] must request an accommodation from the [H]iring Division, even if the applicant previously requested an accommodation from the Personnel Department when taking the Civil Service Exam."

The trial court found respondents presented evidence that Briggs had applied for the "Truck and Equipment Dispatcher" position "in or around May 2017," and that although "[t]he City granted [Briggs] 50% extra time and rescheduled . . . his [oral] interview . . . [as an] accommodation" for his stutter, "[Briggs] achieved a total score of 77.6 on the Civil Service Examination[,] . . . which was not high enough for [him] to qualify to interview as part of the Department Selection Process." The court ruled this position "required clear oral communication and, in some cases, mathematical computations . . . ."

18

The court also noted respondents had shown Briggs "participated in six Department Selection Processes between January 2018 and October 2019," "[a]ll six Department Selection Processes involved oral interviews[,] . . . [Briggs] did not request any accommodations from the Hiring Division related to any of the six Department Selection Processes," and Briggs "did not receive any of the jobs he applied for." As for each of the six positions, the court explained: (1) Briggs's "final score on a January 2018 Labor Supervisor Department Selection Process, which consisted of an oral interview, was 71, and [Briggs] ranked fifth out of five applicants who participated, while the applicant who was hired scored 93"; (2) Briggs's "final score on a June 11, 2018 Labor Supervisor Department Selection Process, which consisted of an oral interview and a written examination, was 82, and [Briggs] ranked fourth out of six applicants who participated, while the applicant who was hired scored 91"; (3) Briggs's "final score on a June 18, 2018 Labor Supervisor Department Selection Process, which consisted of an oral interview, was 74, and [Briggs] ranked fourth out of four applicants who participated, while the applicant who was hired scored 94"; (4) Briggs's "final score on a February 2019 Truck and Equipment Dispatcher Department Selection Process, which consisted of an oral interview, was 77.5, and [Briggs] ranked fourth out of six applicants who participated, while the applicant who was hired scored 85.5"; (5) Briggs's "final score on an April 2019 PSO 'A' Department Selection Process,[6] which

_____

6 According to the trial court, Briggs introduced evidence that his position at DWP was "Power Shovel Operator-B" (PSO-B). Briggs intimates in his opening brief the PSO-A position he

19

consisted of an oral interview and operating test, was 59.4, and [Briggs] ranked second out of two applicants who participated, while the applicant who was hired scored 94.8"; and (6) Briggs's "final score on an October 2019 Truck and Equipment Dispatcher Department Selection Process, which consisted of an oral interview, was 67.5, and [Briggs] ranked eighth out of nine applicants who participated, while the three applicants who were hired scored 84, 81.5, and 80.5."

The trial court ruled that DWP's refusal to hire Briggs for the truck equipment and dispatcher position on three occasions between 2017 and 2019 did not give rise to a viable FEHA disability discrimination claim because Briggs's "evidence does not demonstrate that he possessed . . . the[ required] qualifications" for the position, that is "clear oral communication" and "the ability to perform 'arithmetic or higher level mathematical computations.' " As for all the positions Briggs sought during that timeframe, the court found Briggs's FEHA disability discrimination claim failed because respondents had "shown . . . there was a legitimate non-discriminatory reason for their decisions," that is, Briggs "did not score high enough . . . to be selected for the positions," and Briggs did not "present[ ] evidence raising a triable issue regarding whether there was 'some other circumstance suggesting discriminatory motive.' "

Briggs does not contest the trial court's ruling he was not qualified for the truck and equipment dispatcher position because he did not possess the clear oral communication skills and mathematical competency required for the position. Briggs also

---

sought in 2019 was located "in a different area" than his PSO-B position.

does not challenge the court's rulings that (1) his examination scores constituted a legitimate, non-discriminatory reason not to hire him for the positions for which he applied from 2017 to 2019, and (2) Briggs did not offer evidence showing DWP's failure to promote him was nonetheless motivated by discriminatory animus. Consequently, Briggs fails to demonstrate DWP's refusal to hire him for these positions during that timeframe gives rise to liability for disability discrimination under FEHA.[7]

> **2.** *Briggs does not show a reasonable jury could find that his placement on workers' compensation leave in 2017 was an adverse employment action*

The trial court found respondents proffered evidence that on July 27, 2017, DWP "received a doctor's note indicating that [Briggs] had work restrictions that included 'no repetitive lifting, bending, and/or twisting.' [Citation.]" The court noted a DWP reasonable accommodations coordinator and a director at DWP "determined that [Briggs's] work restrictions could not be accommodated in his position as a PSO because, as part of his Duties Description Record, [Briggs] was supposed to inspect and adjust heavy-duty construction equipment on an on-going basis, which involves repetitive bending, lifting, and twisting." The court further noted the reasonable accommodations coordinator "determined that [Briggs] could not be temporarily reassigned to

---

[7] (See Discussion, part E, *ante* [explaining that being qualified for the position sought and discriminatory animus are essential elements of Briggs's FEHA disability discrimination cause of action].) In Discussion, part F, *post*, we address whether DWP's decision not to hire Briggs for these positions supports his FEHA reasonable accommodation cause of action.

21

light duty work under [ ]DWP's Light Duty program because the only assignment available was office work, which [Briggs] was not trained for." Respondents showed Briggs "was added to the light duty waitlist" and DWP placed him on paid workers' compensation leave for "a temporary period of about 33 workdays" from July to September 2017. The court found Briggs failed to establish "a triable issue of material fact as to whether [Briggs's] placement on Workers' Compensation Leave, in this instance, was an adverse employment action," and observed, "[respondents'] evidence suggests the placement on workers' compensation leave was a reasonable accommodation."

In Discussion part B, *ante*, we rejected Briggs's undeveloped challenge to the trial court's ruling sustaining an objection to evidence related to his placement on workers' compensation leave in 2017 (i.e., his challenge to respondents' objection no. 5). Aside from that claim of error, Briggs does not contest the court's ruling that his placement on workers' compensation leave falls short of establishing an adverse employment action.[8] He thus fails to undermine the court's ruling on that point. We address whether Briggs demonstrates his placement on workers' compensation leave in 2017 gives rise to a FEHA reasonable accommodation claim in Discussion, part F, *post*.

---

[8] Instead, Briggs claims on appeal that respondents placed him on two "improper" Attendance Improvement Plans, "which relied on absences protected by . . . workers' compensation." We address this argument in Discussion, part E.3, *post*.

22

**3.** *Briggs fails to show a rational jury could find the AIPs and MAS he received in 2019 were adverse employment actions*

The trial court explained that respondents had presented evidence showing: "Under [ ]DWP's attendance policy, any employee who has accrued more than six total 'instances' of absences (including 'sick time'), totaling ninety-six hours or more has 'excessive absences,' and is placed on an Attendance Improvement Plan (AIP). . . . When an employee on an AIP has a new absence[ ] instance, the employee is placed on Medical Affidavit Status (MAS) and must provide a doctor's note upon returning to work. [Citation.] AIP/MAS is not disciplinary."

The trial court observed, "[Briggs] claims that he was subjected to an adverse employment action because he was incorrectly placed on Attendance Improvement Plans/Medical Affidavit Status." The court noted respondents' evidence showed that Briggs "sustained a work[-]related injury on November 14, 2018, for which he was off-work between November 15, 2018 and November 29, 2018 (the 'November 2018 Absences')."

The trial court found respondents' evidence showed the following: "In February 2019, [Briggs] was placed on AIP because [ ]DWP's payroll system reflected that [Briggs] had excessive absences, in part based on the November 2018 absences arising from [Briggs's] workers' compensation claim. [Citation.] [Briggs] was placed on AIP in May 2019 because . . . the City/[ ]DWP's payroll system [still] reflected that [Briggs] had excessive absences[, based in part on the November 2018 Absences]. [Citation.] [Briggs] was placed on MAS on August 27, 2019, in part because, . . . the City/[ ]DWP's payroll

23

system reflected that [Briggs] was already on AIP, and [he] had accrued at least one additional absence." The court, however, also found Briggs presented evidence that "DWP's Medical Certification Policy specifically excludes from counting towards an AIP . . . work[-]related illnesses or injuries."

In rejecting Briggs's FEHA discrimination cause of action to the extent it was predicated on his placement on AIP and MAS, the trial court remarked, "While [Briggs's] evidence demonstrates he was improperly placed on an AIP/MAS, the evidence fails to show a triable issue of material fact as to whether [Briggs's] placement on an AIP/MAS was an adverse employment action."

On appeal, Briggs seems to argue the two AIPs and one MAS were adverse employment actions because they amounted to employee discipline. As an initial matter, Briggs claims repeatedly that DWP "relied on [its] 'Guide to Employee Discipline" to "plac[e him] on the improper AIPs/MAS." In advancing this contention, Briggs intimates a rational factfinder could infer, based solely on the title of a DWP policy governing AIPs and MASs, that placement thereon is "reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his . . . career." (See *Yanowitz*, *supra*, 36 Cal.4th at pp. 1035–1036, 1054–1055 [defining adverse employment action].) We reject this contention as speculation. (See *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 162–163 ["[E]vidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact."].)

24

Briggs also misrepresents the contents of certain DWP documents relating to the two AIPs and one MAS he received in 2019.

First, Briggs asserts, "Both of the AIPs issued to Briggs state that they have 'possible effects . . . on promotional opportunities and the schedule of subsequent reviews.' [Citation.]" (Ellipsis inserted by Briggs.) Yet, the two memoranda Briggs cites indicate Figley discussed with Briggs, inter alia, "The elements of the Attendance Improvement Program (AIP), including how the AIP operates, the goals of the AIP, the possible effects *of poor attendance* on promotional opportunities, and the schedule of subsequent reviews." (Italics added.) The documents do not state that mere placement on an AIP (as opposed to poor attendance generally) impacts Briggs's promotional opportunities, and there is no indication that the "subsequent reviews" described therein refer to anything other than further discussions concerning Briggs's placement on an AIP. The only consequence of being on an AIP specified in these memoranda is possible "place[ment] on Medical Affidavit Status which would require [Briggs] to provide a physician's certificate for each instance of illness."

Second, Briggs claims, "The MAS threatened that Briggs may be subjected to 'disciplinary action up to and including discharge.' [Citation.]" In fact, the memorandum cited by Briggs states, "[F]or any absence due to illness, [Briggs is] required to furnish written verification from a licensed physician" containing certain information, including "[a] description of the illness . . . ." The document admonishes Briggs that failure to adhere to that doctor's note requirement "may subject [him] to disciplinary action," and that "[c]ontinued excessive absenteeism may also

25

lead to disciplinary action up to and including discharge." Briggs does not argue that this obligation to submit a doctor's note for illness-related absences, as such, is a form of discipline.

Third, Briggs cites what appears to be a DWP policy for the following proposition: "The consequences of an AIP/MAS may include 'disdplinary action.' (*sic*.) [Citation.]" (First alteration supplied by Briggs.) The page from the clerk's transcript upon which Briggs relies, however, directs DWP supervisors to "[d]iscuss . . . with [an] employee" who has excessive absences certain "points," including "[t]he consequences of lack of improvement which may include being placed on Medical Affidavit Status *or* disdplinary [*sic*] action." (Italics added.) Briggs thus conflates placement on MAS with the excessive absenteeism that may lead to discipline.

Lastly, Briggs avers a DWP official attested, " '[A]ny time off work without a valid leave of absence (*e.g.* sick note, approved vacation, *etc.*) may be posted as "unauthorized time," which can lead to discipline,' " and that she told Briggs " 'he needed to communicate with his supervisor regarding his whereabouts, and . . . that he could be subject to discipline for failing to do so.' [Citation.]" (Boldface & underscoring omitted.) This testimony has no apparent bearing on whether placement on an AIP or MAS is a form of discipline.

In sum, Briggs fails to show the trial court erred in concluding that no reasonable jury could find the AIPs and MAS he received were adverse employment actions.

26

**4.** *Briggs does not establish a triable issue on discriminatory animus vis-à-vis his assignment to ECH duties in 2017, the August 27, 2019 NTCD, his placement on paid administrative leave in September 2019, and the issuance of the restriction notice in September 2019*

In its summary judgment order, the trial court observed, [Briggs] alleges that he was harassed and discriminated against because [ ]DWP intermittently asked him to work as an Electrical Craft Helper (ECH), an entry level assistant to Linemen" "at an unspecified time in 2017." The court also noted respondents introduced evidence showing DWP issued an NTCD (notice to correct deficiencies) to Briggs on August 27, 2019 that accused him of " 'driving around Lone Pine approximately three blocks from [his] work location without authorization' " on October 31, 2018. Further, the court found respondents presented evidence that DWP placed Briggs on paid administrative leave effective September 10, 2019 to "give [ ]DWP the opportunity to investigate and review allegations that [Briggs] had failed to adequately carry out assigned responsibilities on multiple occasions . . . and failed to cooperate with others and/or used abusive language at work"; DWP shortly thereafter distributed a restriction notice prohibiting Briggs from entering all DWP facilities; and Briggs returned from this temporary paid administrative leave to "his usual position as a PSO in the Owens Valley Electrical System" "[o]n or about November 25, 2019." As for all of these alleged adverse employment actions, the court concluded Briggs failed to demonstrate the existence of a triable issue of material fact that

27

respondents had undertaken them "*because of*" his asserted disabilities.

In his appellate briefing, Briggs does not direct us to any evidence giving rise to a triable issue of material fact as to whether DWP or Figley assigned him to ECH duties, provided the NTCD to him, placed him on paid administrative leave, or issued the restriction notice because of his stutter, work-related injury, or foot surgery. Rather, Briggs levels vague and unsupported averments concerning respondents' purported discriminatory animus. For instance, on page 41 of his opening brief, Briggs alleges, without any accompanying record citation, "Figley called Briggs 'stupid' and Figley's harassment increased precipitously after Briggs engaged in protected activities such as when Briggs took time off of work for workers' compensation leave; when Briggs took medical leave for his foot surgery; and when Briggs opposed [r]espondents' discriminatory use of medical leave and workers' compensation leaves to place Briggs on two improper AIPs, and then on one improper MAS." By not providing cogent argument or citation to the evidentiary record demonstrating that these purported adverse employment actions were the product of one or more of Briggs's asserted disabilities, Briggs forfeits his contention that they were. (See *United Grand Corp.*, *supra*, 36 Cal.App.5th at p. 156 [deeming an argument forfeited because the appellant failed to support it with cogent argument and citations to the record and legal authority].)

## F. Briggs Fails To Show There Is a Triable Issue as to His FEHA Reasonable Accommodation Cause of Action

"To establish a failure to accommodate claim [under FEHA], [an employee] must show (1) [the employee] has a

28

disability covered by FEHA; (2) [the employee] can perform the essential functions of the position; and (3) [the employer] failed reasonably to accommodate [the employee's] disability." (See *Brown v. Los Angeles Unified School Dist.* (2021) 60 Cal.App.5th 1092, 1107 (*Brown*).) "A 'reasonable accommodation' means a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired. [Citation.] . . . [A]n accommodation is not reasonable if it produces an undue hardship to the employer . . . ." (See *id.* at pp. 1107–1108.)

In his opening brief, Briggs appears to argue respondents failed to reasonably accommodate his alleged disabilities when: (1) DWP "refus[ed] to allow him to write out his job interview answers instead of orally answering the questions" for the positions he sought between 2017 and 2019;[9] (2) DWP placed him on paid workers' compensation leave in 2017; (3) "even though Figley knew DWP policies did not require it, Figley demanded [in August 2019 that] Briggs personally deliver a doctor's note shortly after Briggs had foot surgery"; and (4) DWP improperly placed him on two AIPs and one MAS in 2019 based in part on his absences for a work-related injury in 2018. As we explain

---

[9] Briggs argues for the first time in his reply brief that "[r]espondents [also] failed to accommodate him in job interviews" in 2020 and 2021. Briggs forfeits this contention by belatedly raising it. (See *County of Los Angeles v. Niblett* (2025) 116 Cal.App.5th 454, 477–478 (*Niblett*) [holding that an appellant forfeited a point by "asserting [it] for the first time in his reply"].)

29

below, Briggs fails to demonstrate that these incidents give rise to a viable FEHA reasonable accommodation cause of action.[10]

Turning to DWP's alleged failure to allow Briggs to write out his answers to interview questions during the civil service hiring process, Briggs does not contest the trial court's ruling that no rational factfinder could conclude he was qualified for the truck and equipment dispatcher position he sought on three occasions between 2017 and 2019. (See Discussion, part E.1, *ante*.) DWP's refusal to hire him for that position thus cannot support his reasonable accommodation cause of action. (See *Brown*, *supra*, 60 Cal.App.5th at p. 1107 [noting that the employee's ability to "perform the essential functions of the position" is an essential element of this cause of action].)

As for the other positions Briggs pursued (i.e., his three applications for labor supervisor and one application for PSO-A), Briggs does not challenge the trial court's ruling he did not request an accommodation from the hiring division for those positions.[11] Briggs also does not dispute, and thus tacitly agrees

---

[10] Briggs also complains, "DWP did not address the fact that Briggs emailed Figley he would be out of work for a foot surgery, and yet Figley subsequently told DWP he had 'not heard' from Briggs 'at all.' " We held in Discussion, part E, *ante*, that Briggs violated California Rules of Court, rule 8.204(a)(2)(C) by failing to include a summary of relevant facts in his opening brief. Without further context, it is not apparent that Figley's purported feigned ignorance of Briggs's foot surgery gives rise to liability for failure to accommodate Briggs's disabilities.

[11] (See Discussion, part E.1, *ante*.) Briggs does not argue he requested a reasonable accommodation from the personnel department in connection with those positions (i.e., at the first

30

with, respondents' assertion that as to these positions, "there is no evidence that Briggs had previously interacted with anyone in the relevant DWP hiring divisions such that they would have been aware of Briggs'[s] stutter much less its resulting limitations on his ability to participate in oral interviews."[12] Although Briggs intimates in his opening brief that his stutter is an "*open and obvious* medical condition [that] . . . interferes with his ability to speak" such that the hiring division should have offered to allow him to write his answers to interview questions in the absence of a request, he does not elaborate further on that point or support it with any citation to the record or legal authority. (Italics added.) Accordingly, Briggs does not show a reasonable factfinder could conclude DWP failed to reasonably accommodate Briggs when he sought the labor supervisor and PSO-A positions.[13]

_____

part of the two-part civil service exam process) or clarify whether he is maintaining that DWP failed to reasonably accommodate him at that stage for those positions.

[12] (See *Niblett*, *supra*, 116 Cal.App.5th at p. 467 & fn. 11 [noting that appellants may " 'tacitly concede[ ]' a point raised in the respondents' brief by 'failing to dispute it in their reply' "].)

[13] (See *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 443 [" ' "[T]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. . . . " ' [Citation.] 'It is an employee's responsibility to understand his or her own physical or mental condition well enough to present the employer at the earliest opportunity with a concise list of restrictions which must be met to accommodate the employee.' "].)

31

Regarding DWP's decision to place Briggs on workers' compensation leave in 2017, Briggs argues, without any record citation or further discussion, that "DWP relied entirely on vague, conclusory statements to support its contention that Briggs could not perform his Power Shovel Operator ('PSO') duties, and that no other positions existed he could perform with or without accommodation." Yet, the trial court found respondents' evidence showed that the restrictions identified in Briggs's doctor's note (i.e., no repetitive lifting, bending and/or twisting) were incompatible with the duties set forth in the job description for PSOs. (See Discussion, part E.2, *ante*.) The court also found respondents' evidence showed a DWP reasonable accommodations coordinator determined Briggs could not be temporarily assigned to light duty work because only office work was available, and Briggs lacked the necessary training for that office work. (See *ibid.*) Briggs does not contest these rulings or otherwise explain why his placement on workers' compensation leave in 2017 supports his cause of action for reasonable accommodation.

In connection with his assertion that "Figley demanded Briggs personally deliver a doctor's note shortly after Briggs had foot surgery," Briggs directs us to an excerpt from his declaration in which he attested that on August 6, 2019, he "received text messages and a phone call from [OVES timekeeper Eloina] Gonzalez" in which "she sounded panicked and frantic" and "said something like Figley was demanding that I bring in a doctor's note immediately." Yet, Briggs acknowledges on page 21 of his reply brief that the next day, that is, on August 7, 2019, Gonzalez sent Briggs a text message informing him "he could turn the note in 'electronically.' " Notwithstanding this text message from

Gonzalez, Briggs claims on page 25 of his reply that he "hand-delivered Gonzalez his doctor's note on August 8, 2019 . . . ." Given he apparently could have provided the doctor's note electronically, we fail to discern why requiring Briggs to provide a doctor's note constitutes a failure to reasonably accommodate his disability.

Lastly, Briggs seems to argue the two AIPs and one MAS he received in 2019 based in part on his November 2018 absences for a work-related injury give rise to liability for failure to reasonably accommodate that injury. As discussed earlier, Briggs does not show the trial court erred in ruling that no reasonable factfinder could conclude placement on an AIP or MAS is an adverse employment action, that is, these actions are not reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in the employee's career. (See Discussion, part E.3, *ante.*) Indeed, although an AIP could lead to an MAS, it seems that the latter status simply requires the employee to submit a doctor's note substantiating illness-related absences. (See *ibid.*) On appeal, Briggs fails to link these employment actions to a failure to reasonably accommodate, and, therefore, we do not address this issue further.

In sum, we reject Briggs's challenge to the trial court's ruling that his FEHA failure to accommodate cause of action fails as a matter of law.

## G.    Briggs Does Not Establish There Exists a Triable Issue on His Cause of Action for Retaliation Under Labor Code Section 98.6

"[Labor Code s]ection 98.6 prohibits an employer from retaliating against an applicant or employee because the

applicant or employee exercised a right afforded him or her under the Labor Code." (See *Garcia-Brower v. Premier Automotive Imports of CA, LLC* (2020) 55 Cal.App.5th 961, 965, fn. 1, 972.)

In his opening brief, Briggs argues respondents violated Labor Code section 98.6 by taking "a significant number of actions . . . against Briggs" after he "complained [on March 8, 2019] to DWP's Human Resources and to Figley that [Briggs's] and other coworkers' paychecks had been shorted." (Boldface & some capitalization omitted from the first quotation.) He further argues, "Under Labor Code § 98.6, a rebuttable presumption of retaliation is created if within 90 days of the complaint of unpaid wages, an employer takes any discriminatory or retaliatory action against an employee." Although he does not direct us to any specific provision of Labor Code section 98.6 that creates this presumption, Briggs appears to be referring to the following sentence from the *current* version of subdivision (b)(1) of the statute: "If an employer engages in any action prohibited by this section within 90 days of the protected activity specified in this section, there shall be a rebuttable presumption in favor of the employee's claim." (See Lab. Code, § 98.6, subd. (b)(1).)

Briggs claims to have triggered the presumption by providing "undisputed evidence of [r]espondents' disciplinary and hostile actions taken within 90-days of his March 2019 protected wage complaint . . . ." Briggs then lists in this section of his opening brief fourteen "presumptively discriminatory and/or retaliatory actions[ ] or adverse employment actions" he claims respondents took within 90 days of "Briggs's March 8, 2019 protected report of unpaid wages" (e.g., "[ ]forty-five days after

34

Briggs's wage complaint[, r]espondents wrote up Briggs for kicking a sage brush five months prior to the write up").[14]

In their appellate brief, respondents correctly note that the amendment adding the language to Labor Code section 98.6, subdivision (b)(1) setting forth the 90-day rebuttable presumption did not become effective until January 1, 2024. (See Stats. 2023, ch. 612, § 1 [filed with Sec'y of State on Oct. 8, 2023, and adding this text to Lab. Code, § 98.6, subd. (b)(1)]; Cal. Const., art. IV, § 8, subd. (c)(2) [providing the effective date for this amendment].) Respondents also invoke the " 'basic canon of statutory interpretation . . . that statutes do not operate retrospectively unless the Legislature plainly intended them to do so. [Citations.]' [Citation.]" (See *Bullard v. California State Automobile Assn.* (2005) 129 Cal.App.4th 211, 217 (*Bullard*).) According to respondents, because "Briggs cannot show" the Legislature intended for the amendment to Labor

---

[14] Briggs thereafter enumerates 20 plus additional alleged "adverse actions" occurring more than 90 days after March 8, 2019. Briggs also claims to have "raised triable issues of fact as to whether he was treated differently, and less favorably, than his coworkers who did *not* complain about wages," and asserts one coworker was " 'verbally counselled' " for "threaten[ing] to shoot Briggs" and another was not suspended even though the police "arrested [that coworker] . . . for driving under the influence." Although these arguments appear under headings that refer to Labor Code section 98.6's 90-day presumption, Briggs does not clarify what connection, if any, these contentions have to the applicability of that presumption. Accordingly, we disregard these additional arguments. (See *United Grand Corp.*, *supra*, 36 Cal.App.5th at p. 153 [" 'Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading.' "].)

Code section 98.6 to operate retroactively, "the [90-day] presumption does not apply to Briggs'[s] Labor Code section 98.6 claim based on alleged retaliatory acts occurring in 2019."

In his reply brief, Briggs does not contend the Legislature intended for Labor Code section 98.6, subdivision (b)(1)'s 90-day presumption to have retroactive application.  Instead, Briggs argues we should "disregard" respondents' assertion the rebuttable presumption applies only to conduct occurring on or after January 1, 2024 because they failed to raise that argument during the trial court proceedings.

Assuming without deciding that respondents failed to preserve for appeal their challenge to Briggs's invocation of the statutory 90-day presumption, we exercise our discretion to decide whether Briggs has discharged his burden of showing the presumption operates retroactively.  "Retroactivity of a statute is a question of law subject to our de novo review." (*Bullard*, *supra*, 129 Cal.App.4th at p. 217.)  We ordinarily affirm the entry of summary judgment if the undisputed facts establish the ruling " 'is correct on any theory of law applicable to the case,' " regardless of whether the respondent raised that particular legal theory below.  (See *Schmidt*, *supra*, 223 Cal.App.4th at p. 1498.)  In sum, we excuse any forfeiture on respondents' part because they raise a pure question of law that both sides have had an opportunity to brief on appeal.  (See *In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 298, fn. 2 ["[A]pplication of the forfeiture rule 'is not automatic.  [Citation.]  When [a party] raises a question of law, for example, the appellate court can exercise its discretion to address the issue.' "].)

The legislation that added the 90-day presumption to Labor Code section 98.6 does not contain any language demonstrating

the Legislature intended for the presumption to apply to alleged retaliatory acts occurring before the effective date of the amendment, that is, January 1, 2024.  Rather, the amendment simply added the statutory 90-day presumption without comment.  (See Stats. 2023, ch. 612, § 1 [amending Lab. Code, § 98.6, subd. (b)(1)].)  Briggs, moreover, does not provide any legislative history or legal authority showing that the amended statute applies retroactively to conduct predating January 1, 2024.  He thus fails to demonstrate that the 90-day presumption applies.  (See *Bullard*, *supra*, 129 Cal.App.4th at p. 217 [holding there is a "presumption against retroactive application" of statutes]; *Inyo Citizens for Better Planning v. Inyo County Bd. of Supervisors* (2009) 180 Cal.App.4th 1, 14 ["We do not serve as 'backup appellate counsel,' or make the parties' arguments for them."].)

In his reply brief, Briggs also contends, with no supporting analysis or citation to authority, that "[e]ven if this Court determine[s] there is no rebuttable presumption, Briggs absolutely raised an avalanche of adverse employment actions taken against him shortly after . . . his report of unpaid wages," thereby "preclud[ing] the granting of" respondents' motion as to his cause of action under Labor Code section 98.6.  We disregard this contention because Briggs fails to offer any cogent argument or legal analysis to support it.  (See *Hernandez*, *supra*, 37 Cal.App.5th at p. 277 [" 'We are not bound to develop appellants' arguments for them.' "].)

37

For the foregoing reasons, we conclude Briggs fails to show there exists a triable issue of material fact as to his cause of action under Labor Code section 98.6.[15]

## H.     Briggs Forfeits His Claims of Error as to His Remaining Causes of Action

In Discussion, parts E, F, and G, *ante*, we rejected Briggs's claims of error concerning three out of his nine causes of action. For the reasons set forth below, we conclude Briggs forfeits his appellate claims as to his remaining six causes of action.

In his opening brief, Briggs does not contest the trial court's disposition of his causes of action for FEHA age discrimination and interference with his CFRA rights. He also makes only passing references to his FEHA causes of action for retaliation

---

[15] In Briggs's reply brief, he argues, "[O]nly *five days after Briggs'[s] wage complaint*[,] . . . Figley decided to 'reopen the investigation' into" Briggs concerning an incident that occurred on October 31, 2018. This assertion appears under the following heading: "Briggs Adequately Pled that He Was Subjected to Retaliation for *Reporting Discrimination*, and *Opposing Discrimination*." (Boldface omitted, italics added.) He also avers the following under the heading "respondents citations [*sic*] to the record which do not support the respondents' representations of facts" (boldface & capitalization omitted): "[Briggs] has pointed out innumerable weaknesses, inconsistencies, and incoherencies, in [r]espondents' claims of 'legitimate reasons' it [*sic*] decided to take an avalanche of adverse employment actions against Briggs, most of which took place after he made a wage complaint in March 2019." Inasmuch as Briggs offers these arguments to support his Labor Code section 98.6 cause of action, he forfeits those contentions by failing to provide proper headings for them. (See *United Grand Corp.*, *supra*, 36 Cal.App.5th at p. 153.)

and failure to prevent discrimination and harassment.  In the section of his opening brief in which he discusses his cause of action for failure to engage in the interactive process under FEHA, Briggs recites generally applicable legal principles and closes with the following bare assertion, unaccompanied by any record citation or supporting analysis:  "Respondents entirely failed to meet their burden, providing only conclusory statements."  Likewise, the section addressing his FEHA harassment cause of action consists of a description of the law and the following assertion:  "As discussed throughout this brief, [r]espondents subjected Briggs to a regular pattern of abuse, failure to accommodate, and failure to engage in a good faith interactive process, for years."

As we noted earlier, " ' "Even when our review on appeal 'is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief. [Citations.] . . .' " [Citation.]' . . . [Citation.]" (*Cruz, supra,* 113 Cal.App.5th at pp. 953–954.)  Briggs forfeits his claims of error regarding his six remaining causes of action by failing to brief adequately those issues.  (See *United Grand Corp., supra,* 36 Cal.App.5th at p. 156.)

In his reply brief, Briggs raises new arguments as to his CFRA cause of action and his FEHA causes of action for failure to engage in the interactive process, failure to prevent harassment and discrimination, and retaliation.  Briggs forfeits these points by depriving respondents of a fair opportunity to respond to them.  (See *Niblett, supra,* 116 Cal.App.5th at p. 475  [" ' " ' "To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission." ' " ' "].)

## DISPOSITION

We affirm the judgment.  Defendants and respondents are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

M. KIM, J.